UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-cv-62935-MORENO

LUIS PORTALES, MARGARITA HEINE
and FANNY QUINTERO,

       Plaintiff,

vs.


SCHOOL BOARD OF BROWARD COUNTY,

       Defendant.

_____/

## DEFENDANT, SCHOOL BOARD OF BROWARD COUNTY'S, MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

The Defendant, SCHOOL BOARD OF BROWARD COUNTY ("School Board"), by and through its undersigned attorneys and pursuant Federal Rule of Civil Procedure 56 and Local Rule 56.1, moves for the entry of an Order granting summary judgment in its favor with respect to all claims asserted against it in the Complaint, DE 1, filed by the Plaintiffs, LUIS PORTALES ("Portales"), MARGARITA HEINE ("Heine") and FANNY QUINTERO ("Quintero") (collectively "Plaintiffs").[1]

## I. INTRODUCTION

In essence, the Plaintiffs claims that the School Board discriminated against because they are Hispanic by requiring them to pass a job-related training course that was provided only in English. The Plaintiffs' accusations of discrimination cannot be reconciled with the undisputed facts of this case. On a statistical level, the data shows that the School Board's 1,442, Facilities personnel are 28% Hispanic, a figure that closely mirrors the demographic breakdown of Hispanics in Broward Country, Florida, and rebuts any claim of disparate impact. Apps. 5, 6, 7. Not only does the School

---

[1] The Defendant has filed a Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment concurrently with this Motion. The "undisputed facts" upon which this Motion is based are cited as (Facts at ¶ __.).

Board have a diverse workforce, but it **actually** **hired** these three Plaintiffs, all of whom identify as Hispanic.  The School Board then employed and paid them for an extended period of time.  While it is accurate that the Plaintiffs' were required to pass the Basic Facilties Serviceperson course ("Basic FSP course"), the School Board provided them with multiple opportunities to take and retake the course and examination in the hopes that they would pass.  The School Board also offered additional assistance by way of its English for Speakers of Other Languages ("ESOL") program offered by Broward Community Schools, which offers adult students classes designed to prepare participants to communicate competently in English.  The classes are offered a at minimal cost and at many locations in Broward and at a variety of times to make attendance easier.  While it is certainly unfortunate that these Plaintiffs were unable to pass the Basis FSP course despite many attempts, many other Hispanic employees did.  Therefore, the School Board's policies and practices in this case are no way discriminatory.

## II. MOTION

1.      The pleadings, depositions, answers to interrogatories, affidavits, and other documents on file demonstrate that there is no genuine issue as to any material fact and that the Town is entitled to judgment as a matter of law as to all claims framed in the Complaint.

2.      The School Board is entitled to judgment in its favor on the Plaintiffs' disparate impact claim asserted under Title VII for the following reasons:

        (a)      An inability to speak English is not a protected category under Title VII;

        (b)      The School Board practice of providing its Basic FSP course and examination in English does not create any statistical disparity in the number of Hispanic Facilities perssonnel employed by the School Board; and

        (c)      Providing the Basic FSP course and examination only in English serves a legitimate, non-discriminatory objective.

3.      The School Board is entitled to judgment in its favor on the Plaintiffs' disparate treatment claim asserted under Title VII for the following reasons:

        (a)      They cannot establish that they were qualified for the position;

        (b)      They cannot identify any similarly situated non-Hispanic employees treated more favorably;

(c)     They cannot offer evidence that the stated reason for their terminations was pretextual.

4.     The School Board is entitled to judgment in its favor on the Quintero's failure to accommodate claim asserted under the Americans with Disabilities Act ("ADA") for the following reasons:

(a)     Quintero cannot establish that she is "disabled" as that term in defined by the ADA;

(b)     Quintero cannot establish that she is a "qualified individual;"

(c)     Quintero cannot establish that she requested and was denied a

(d)     Quintero cannot offer evidence that the stated reason for her termination was pretextual.

**WHEREFORE**, Defendant, SCHOOL BOARD OF BROWARD COUNTY, requests the entry of final judgment in its favor on all claims asserted in the Complaint, together with such additional relief the Court deems just and proper.

### III.  MEMORANDUM OF LAW

### A. The Plaintiffs' Title VII Discrimination Claims

Title VII of the Civil Rights Act prohibits employers from discriminating in the workplace on the basis of an individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  The statute and accompanying case law organize discrimination into two categories. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807–08 (11th Cir. 2010).   Disparate impact involves "facially neutral employment practices that have significant adverse effects on protected groups ... without proof that the employer adopted those practices with a discriminatory intent .... The evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." Watson v. *808 Fort Worth Bank & Trust, 487 U.S. 977, 986–87, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (internal citations omitted).   "The doctrine seeks the removal of employment obstacles, not required by business necessity, which create 'built-in headwinds' and freeze out protected groups from job opportunities and advancement." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 (11th Cir.2000) (quoting Griffin v. Carlin, 755 F.2d 1516, 1524 (11th Cir.1985)).

In disparate treatment, in contrast, an employer discriminates against a worker "with respect to his compensation, terms, conditions, or privileges of employment, because of" the individual's membership in a protected category. 42 U.S.C. § 2000e–2(a)(1).  Disparate treatment can take the form either of a "tangible employment action," such as a firing or demotion, or of a "hostile work environment" that changes "the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned." Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir.2004).

"Although proof of discriminatory intent is necessary for a plaintiff to succeed on a claim of disparate treatment, a claim of disparate impact does not require evidence of intentional discrimination."  Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1312 (11th Cir. 1999); Joe's Stone Crab, Inc., 220 F.3d at 1273

### 1.  No Disparate Impact

In a disparate impact race discrimination case, a plaintiff initially "must make out a prima facie case 'that [a] facially neutral employment practice has a significantly discriminatory impact.'" Joe's Stone Crab, Inc., 220 F.3d at 1274 (citation omitted).  To establish a prima facie case, a plaintiff must show that "(1) there is a significant statistical disparity among members of different racial groups; (2) there is a specific, facially-neutral employment policy or practice; and (3) there is a causal nexus between the specific policy or practice and the statistical disparity." Cooper v. S. Co., 390 F.3d 695, 724 (11th Cir.2004); accord Joe's Stone Crab, 220 F.3d at 1274.

If the plaintiff establishes a prima facie case, the "burden of production then shifts to the defendant to establish that the challenged employment practice serves a legitimate, non-discriminatory business objective." Joe's Stone Crab, Inc., 220 F.3d at 1275.  "However, even if the defendant satisfies this burden, a plaintiff may still prevail by proving that an alternative, non-discriminatory practice would have served the defendant's stated objective equally as well." Id.

### a. The Plaintiffs' Disparate Impact Claim is Facially Deficient
### where Speaking Only Spanish is Not a Protected Category

As threshold matter, the School Board's decision to provide the Basic FSP course and examination in English does not target any category protected by Title VII.  As held by the Eleventh

Circuit, "Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices." Equal Employment Opportunity Comm'n v. Catastrophe Mgmt. Sols., 852 F.3d 1018, 1030 (11th Cir. 2016). And the Eleventh Circuit has also held that Title VII "does not support an interpretation that equates the language an employee prefers to use with his national origin." Garcia v. Gloor, 618 F.2d 264, 270. (5th Cir. 1980); Santiago-Lebron v. Florida Parole Com'm, 767 F. Supp. 2d 1340, 1349 (S.D. Fla. 2011) (holding, in equal protection case, that "Language is not an immutable characteristic and, by itself, does not identify members of a suspect class."); Soberal–Perez v. Heckler, 717 F.2d 36, 41 (2d Cir.1983) (same); Olagues v. Russoniello, 770 F.2d 791 (9th Cir.1985) (same); see also Mumid v. Abraham Lincoln High School, 618 F.3d 789, 789 (8th Cir.2010) (policy that treats students with limited English proficiency differently than other students does not facially discriminate based on national origin in Civil Rights action).

In Garcia, the Fifth Circuit, in pre-split decision, applied the immutable characteristic limitation to national origin and choice of language. There, a bilingual Mexican-American employee who worked as a salesperson was fired for speaking Spanish to a co-worker on the job in violation of his employer's English-only policy, and he alleged that his termination was based on his national origin in violation of Title VII. The Fifth Circuit affirmed the district court's judgment in favor of the employer following a bench trial. It noted that an expert witness called by the employee had "testified that the Spanish language is the most important aspect of ethnic identification for Mexican–Americans, and it is to them what skin color is to others," and that testimony formed part of the basis for the claim that the employer's policy was unlawful. See id. at 267. Although the district court had found that there were other reasons for the employee's dismissal, the Fifth Circuit assumed that the use of Spanish was a significant factor in the employer's decision. See id. at 268. It explained that neither Title VII nor common understanding "equates national origin with the language that one chooses to speak," and noted that the English-only rule was not applied to the employee as a "covert basis for national origin discrimination." Id. Though the employee argued that he was discriminated against on the basis of national origin "because national origin influences or determines his language preference," the Fifth Circuit was unpersuaded because the employee was bilingual and was allowed to speak Spanish during breaks. Id. And even if the employer had no

5

genuine business need for the English-only policy, the Fifth Circuit said that "[n]ational origin must not be confused with ethnic or sociocultural traits or an unrelated status, such as citizenship or alienage." Id. at 269.  Citing Willingham v. Macon Telegraph Publishing Co., 507 F.2d 1084 (5th Cir. 1975), the Fifth Circuit emphasized that Title VII "focuses its laser of prohibition" on discriminatory acts based on matters "that are either beyond the victim's power to alter, or that impose a burden on an employee on one of the prohibited bases."  Id.

The employee in Garcia also argued that the employer's English-only policy was "discriminatory in impact, even if that result was not intentional, because it was likely to be violated only by Hispanic-Americans and that, therefore, they ha[d] a higher risk of incurring penalties." Id. at 270.  The Fifth Circuit rejected this argument as well because "there is no disparate impact if the rule is one that the affected employee can readily observe and nonobservance is a matter of individual preference," and Title VII "does not support an interpretation that equates the language an employee prefers to use with his national origin."  Id.

The Plaintiff's disparate impact claim as framed by the Complaint fails, as a matter of law, under Catastrophe Management Solutions and Garcia.  Here, the Plaintiffs alleged that the School Board's "English-only instruction and testing disparately disproportionately and significantly adversely impacted the Spanish speaking custodians."  DE 1 at ¶ 28; see Charges.  However, this argument cannot be reconciled with binding precedent.  The Eleventh Circuit held in Catastrophe Management Solutions that "Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices."  852 F.3d at 1030.  And the Fifth Circuit recognized in Garcia, Title VII "does not support an interpretation that equates the language an employee prefers to use with his national origin." 618 F.2d at 270; see also Davis v. Infinity Ins. Co., No. 2:15-CV-01111-JHE, 2016 WL 4507122, at *5 (N.D. Ala. Aug. 29, 2016)  ("Stating that language itself is not a protected characteristic is uncontroversial.");  Milazzo v. Title Cash of Huntsville, No. 2:11-CV-1858-AKK, 2012 WL 5263584, at *4 (N.D. Ala. Oct. 23, 2012) ("Unfortunately for Milazzo, not being able to speak Spanish is not a protected class.");

Based on the foregoing, the Plaintiffs' disparate impact claim fails as a matter of law. Speaking only Spanish (or not speaking English) is not an immutable characteristic that is protected by Title VII.

That the plaintiff in Garcia was bilingual and the Plaintiffs' here claim to not be is not a legally significant distinction.[2]  Here, the School Board did not forbid the Plaintiffs from speaking Spanish, require them to speak English-only while on the job, or expect them to be fluent in English. Rather, the School Board merely required them to pass test that was given only in English.  Such a requirement does not impact any immutable characteristic protected by Title VII.

Moreover, the School Board offered assistance to Facilities Servicepersons (like the Plaintiffs) who had difficulty with English.  Such employees were directed to the English for ESOL program offered by Broward Community Schools.  Facts at ¶ 46; App. 1; App. 37; App. 17.  The ESOL program is designed for adult learners like the Plaintiffs and prepares them to communicate competently in English.  Facts at ¶ 47.  The ESOL classes cost $30 per semester, are of varying lengths, and are offered at more than 60 locations throughout Broward County at a variety of times. Facts at ¶ 48.  Language in this context remains, at the most basic level, a matter of choice and therefore not an immutable characteristic.  The Plaintiffs' disparate impact claim fails as a matter of law.

### b.  No Significant Statistical Disparity

Regardless of whether the Plaintiffs' have alleged a valid disparate impact claim, the School Board remains entitled to judgment because the Plaintiffs cannot meet their burden to show a significant statistical disparity.  As recognized in Joe's Stone Crab, the Eleventh Circuit "adopt[s] a flexible approach for determining whether a particular statistical deviation is 'significant' for disparate impact analysis in light of all the facts and circumstances." 220 F.3d at 1275 n. 12 (citation omitted).  However, even under a flexible approach, the deviation cannot rest solely on "'bottom line' statistical imbalances in an employer's workforce." Id. at 1276 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 992, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)).  The statistical deviation also may be unreliable if it is based upon "small or incomplete data sets[.]" Watson, 487 U.S. at 996–97, 108 S.Ct. 2777.  Moreover, a plaintiff must offer "'statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" Joe's Stone Crab, 220 F.3d at

---

[2] All three Plaintiffs' submitted resumes in English, CITE, and Portales claimed that he had "a fair understanding of the English Language and continue to study it."  App. 19.

1274–75 (quoting <u>Watson</u>, 487 U.S. at 994, 108 S.Ct. 2777). "[W]hat the plaintiff must attempt to do is show that there is a legally significant disparity between (a) the racial composition, caused by the challenged employment practice, of the pool of those enjoying a job or job benefit; and (b) the racial composition of the qualified applicant pool." <u>In re Employment Discrimination Litig. Against State of Ala.</u>, 198 F.3d 1305, 1312 (11th Cir. 1999); <u>Wards Cove Packing Co. v. Atonio</u>, 490 U.S. 642, 650–51, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1989); <u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1520 (11th Cir.1995).

The Plaintiffs cannot establish a prima facie case for a disparate impact claim based on the School Board's practice of providing the Basic FSP course examination in English because there is not statistical disparity in the number of Hispanic persons employed as Facilities Servicepersons. To the contrary, the undisputed record evidence demonstrates that the School Board's Facilities personnel are a racially and ethnically diverse group that closely aligns with the demographics of Broward County, Florida.  As of May 1, 2017, the District employed 1,442 Facilities personnel and, of those 1,442 Facilities personnel, 405 (or 28%) identified as Hispanic/Latino.  App. 5.  The 2010 United States Census shows that approximately 25% of Broward County is Hispanic or Latino.  App. 6.  By 2015, the Hispanic or Latinio population of Broward County had risen to 27%.  App. 7. Because the ethnic breakdown of the Facilities personnel closely matches that of the potential applicant pool, the Plaintiffs cannot meet their burden to establish a "significant" statistical deviation. <u>See</u> <u>In re Employment Discrimination Litig. Against State of Ala.</u>, 198 F.3d at 1312–13 (noting that "courts have found qualified applicant pools to be adequately represented by regional populations") <u>citing</u> <u>International Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 337 n. 17, 97 S.Ct. 1843, 1855–56 n. 17, 52 L.Ed.2d 396 (1977) (finding regional population figures to be probative in a pattern or practice discrimination suit); <u>Kim v. Commandant, Def. Language Inst., Foreign Language Ctr.</u>, 772 F.2d 521 (9th Cir. 1985) (affirming grant of summary judgment in favor of Defense Language Institute on disparate impact claim brought by Korean-born candidate because candidate failed to demonstrate that English language oral proficiency test had a disparate impact upon nonnative English speakers).

**c.  The School Board's Use of English for the
Basic FSP Course Serves Legitimate Purposes**

Even if the Court were to find that the Plaintiffs' have stated a claim and that a significant statistical disparity exited, the School Board remains entitled to judgment as a matter of law to Count I because providing the Basic FSP course and examination only in English serves a legitimate, non-discriminatory objective.  First, by law, "English is the official language of the State of Florida." Fla. Const. art. II, § 9.  In addition, the School Board, like the United States government, conducts its business in English.  See http://www.browardschools.com/; Soberal-Perez v. Heckler, 717 F.2d 36, 42 (2d Cir. 1983) cert. denied, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984) ("Congress conducts its affairs in English, the executive and judicial branches of government do likewise." "English is the national language of the United States.").  Therefore, it was entirely logical and reasonable for the School Board to provide a training course for School Board employees in English.

Second, the Facilities Serviceperson job description requires that Facilities Servicepersons be able to "[m]ust be able to follow written and oral instructions on cleaning and equipment operation." App. 1, Ex. A.  Requiring Facilities Servicepersons to pass a test in English assures that they will be able to fulfill this job requirement where the School Board (like the State of Florida and United States) conducts its business in English.  As Terrance Johnson testified, an inability to follow instructions from English speaking supervisors is sometimes an issue for Facilities Servicepersons that only speak Spanish.  App. 1 at ¶ 10l; Facts ¶ 50.

Third, providing the Basic FSP course in Spanish would be cost prohibitive.  The Basic FSP course and examination have always been provided in English and no one has ever translated those materials into Spanish.  Facts at ¶ 44; App. 1 at ¶¶ 31-32.  It would be unduly burdensome to require the School Board to offer the course and examination in Spanish which would involve translating all of the materials into Spanish and training bilingual instructors.  It would also require the School Board to hire and maintain bilingual on-site supervisors so that employees that could speak only Spanish employees could be instructed to carry out their employment duties.

The School Board is not an outlier in providing its training in English.  The Florida School Plant Management Association, an association that offers custodial training and certifications through out the state, also only provides its training in English.  App. 44.

9

Moreover, "[a] decision to provide Spanish language services as well as English would merely shift the alleged discrimination to all other non-English-speaking groups." Soberal-Perez v. Heckler, 717 F.2d 36, 42 (2d Cir. 1983).  If the School Board was obligated to provide the training materials, course, and examination in Spanish, it would also required to provide them in a host of other languages spoken in the area including Creole and Portuguese.  Title VII cannot be intended to require such a costly and burdensome actions by a government employer.

For these reasons, it was certainly reasonable and lawful for the School Board to provide the Basic FSP course and examination in English.  See Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2d Cir. 1983) (holding that the Secretary of Health and Human Service's failure to provide forms and services in Spanish did not discriminate against Hispanics on the basis of national origin); see also E.E.O.C. v. Sephora USA, LLC, 419 F. Supp. 2d 408 (S.D.N.Y. 2005) (holding "English-only" rule imposed by an employer, an operator of retail cosmetics stores, which required consultants and cashiers to speak only English when on stage during business hours when clients were present, was job-related and consistent with business necessity, and thus, did not violate Title VII").

### 2. The Plaintiffs' Disparate Treatment Claims Fail

A potential employee may prove an employer intentionally discriminated against him through direct or circumstantial evidence.  E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir.2002). "Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption."  Id. (internal quotation marks and alterations omitted).  With circumstantial evidence, a plaintiff may prove his case via the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Id.

Under the McDonnell Douglas framework, once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory, non-retaliatory reason for its action. Crawford, 482 F.3d at 1308; Brown, 597 F.3d at 1181. The employer need not persuade the court that it was actually motivated by the proffered reason, only that the reason existed and was legitimate. Crawford, 482 F.3d at 1308.  If the employer articulates one or more reasons, the presumption of discrimination is rebutted, and the burden of production shifts

back to the plaintiff to offer evidence that the employer's stated reason was a pretext for illegal discrimination.  Id.

### a.  No Direct Evidence of Discrimination

The burden-shifting framework applies to the Plaintiffs' Title VII disparate treatment claims because they cannot offer direct evidence of discrimination.  Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (quotation and citation omitted).  Such evidence "must indicate that the complained-of employment decision was motivated by the decision-maker's [discrimination]." Id. at 1358-59.  Accordingly, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination." Id. at 1359 (quotation and citation omitted); Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (quotation marks omitted).  Evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. Burrell v. Bd. of Tr. of Ga. Military Coll., 125 F.3d 1390, 1393-94 (11th Cir. 1997).

For example, in gender discrimination cases, the Eleventh Circuit has held all of the following statements to be direct evidence: "a woman was not competent enough to do this job," Haynes v. W.C. Caye & Co., 52 F.3d 928, 930 (11th Cir. 1995); "no woman would be named to a B scheduled job," Burns v. Gadsden State Community College, 908 F.2d 1512, 1518 (11th Cir. 1990); "we can't have women in management," Sennello v. Reserve Life Ins. Co., 872 F.2d 393, 394, 395 (11th Cir. 1989).

Here, all the three Plaintiffs identify alleged remarks and conduct by Terrance Johnson as proof of intentional discrimination.  See  App. 9 at ¶ 6 ("Mr. Johnson would yell at us, the employees, during the testing. He did not allow the students to ask any questions. If we did ask for help from another person who was taking the test, he would yell at us to stop talking. .... In one incident, Fanny Quintero, went up to Mr. Johnson to ask him a question and in front of the entire classroom Mr. Johnson yelled at her that she should be home if she 'did not speak English'. Whenever I asked Mr. Johnson any questions, he would ignore me.  He would often make comments out loud that we 'needed to know how to speak English'."); App. 8 at ¶ 6 ("If I had a question or if

something technical happened to the computers, Mr. Johnson told me not to speak to him. I was only to speak to him in English. The computers would show a question in both English and Spanish but, Mr. Johnson choose only to show the questions in English. If he happened to click on the question in Spanish, he would immediately take it off."); App. 10 at ¶ 6 ("Terrance Johnson discriminated against me by telling me and other Hispanic custodians that we need to speak English if we wanted to work for the School.  Whenever I wanted to ask a question, Mr. Johnson would yell at me in front of the class.  Additionally, on or about July 6, 2015 my niece, Angelica, on my behalf contacted the School Board to ask if they could give me the test in Spanish and they replied No, because then they would have to offer the test in different languages to everyone else.").

Two problems exists with the Plaintiffs' reliance on Johnson's alleged statements and conduct.  First, they are not direct evidence of any intent to discriminate against persons of Hispanic origin.  They do not "indicate that the complained-of employment decision was motivated by [his discrimination]."  See Damon, 196 F.3d at 1358-59.   At worst, they represent a preference for persons who speak English regardless of their race or national origin and are not, therefore, direct evidence of discrimination.  See Morrison v. City of Bainbridge, 432 Fed. Appx. 877, 880 (11th Cir. 2011) (finding that supervisor's remarks that he was "going to get these old folks out of here and bring in some new blood" was only circumstantial evidence of discrimination); Walker v. St. Joseph's/Candler Health Sys., 506 Fed. Appx. 886, 888 (11th Cir. 2013) (statement that the plaintiff should go back to the night shift "to have peace and be with her own kind" "does not prove race or gender discrimination without inference" and, therefore, "does not meet the standard for direct evidence in this Circuit."); see also Hollins v. Fulton County, 422 Fed. Appx. 828, 831 (11th Cir. 2011); Ritchie v. Indus. Steel, 426 Fed. Appx. 867, 871-872 (11th Cir. 2011).

Second, Johnson was not the decision-maker regarding the Plaintiffs' employment.  Facts at ¶ 52; App. 1 at ¶ 7.   "[S]tatements by nondecisionmakers" are not direct evidence of improper discrimination.  Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring). Since Johnson was not the decision-maker with respect to the complained-of employment actions (i.e., the loss of their employment), any alleged comment by Johnson is simply irrelevant to terminations recommended by the principals and approved by the School Board.

**b.  The Plaintiffs Cannot Establish a Prima Facie Case**

To establish a prima facie Title VII claim for disparate treatment, each Plaintiff "must show that []he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) ... that h[is] employer treated similarly situated employees outside of h[is] class more favorably."  Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004).

The Eleventh Circuit has explained that an individual the plaintiff identifies as his comparator must be similarly situated "**in all relevant respects**" and that the comparator must be "**nearly identical** to the plaintiff."  See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997) (emphasis added) ("all relevant respects"); Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir.1999) ("nearly identical"); Wilson, 376 F.3d at 1091.  This emphasis on similarity prevents "courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Burke-Fowler, 447 F.3d at 1323 (quotation omitted).

Each of the Plaintiffs' disparate treatment claims fail for the same reasons.  First, none of them can establish that they were qualified for the position.  The CBA and Facilities Servicepersons require that Facilities Servicepersons pass the Basic FSP course and examination as a condition to remaining employed as Facilities Servicepersons.  Facts at ¶¶ 21-22; App. 1, Ex. A, B.  Because it is undisputed that none of the Plaintiffs were able to meet this requirement, Facts at ¶¶ 59, 69, 73, they were not entitled to remain employed as Facilities Servicepersons.

Second, the Plaintiff cannot identify any similarly-situated non-Hispanic employees treated differently.  To the contrary, the undisputed record demonstrates that all Facilities Servicepersons who could not pass the Basic FSP course were subject to dismissal regardless of national origin.  See App. 1.

**c.  The School Board's Legitimate, Non-discriminatory Reasons**

The School Board independently remains entitled to judgment because the Plaintiffs cannot demonstrate that the stated reason for their terminations was pretextual.  Wilson, 376 F.3d at 1087.  An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; **and** (2) the real reason was unlawful.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  A plaintiff must show pretext with "concrete evidence in the form of specific facts." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009).  Mere "conclusory allegations and assertions" will not suffice.

13

<u>Id.</u>   To show pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the defendant's] proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence."   <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997).   He cannot "recast [the defendant's] proffered nondiscriminatory reasons or substitute [her] business judgment for that of [the defendant]. Provided that the proffered reason [is] one that might motivate a reasonable employer, [the plaintiff has to] meet that reason head on and rebut it . . . ."   <u>Chapman</u>, 229 F.3d at 1030.

The Plaintiffs' cannot meet this burden.   First, the School Board has demonstrated a non-discriminatory reason for terminations.   "An employer's burden to articulate a non-discriminatory reason . . . is a burden of production, not of persuasion. As this burden involves no credibility determination, it has been characterized as exceedingly light. So long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production."   <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 769-70 (11th Cir. 2005) (citations and quotations omitted); <u>Alvarez</u>, 610 F.3d at 1265.   Each of the Plaintiffs' termination documents reflected that they were being terminated for failing to complete the Basic FSP course.   <u>See</u> App. 28; App. 40; App. 41. ("Not Qualified Failure to Complete/Pass Basic FSP training Course.").

Second, the Plaintiffs cannot show that these reasons were pretextual.   The summaries of their training records confirm that each one of them took and failed the Basic FSP course examination multiple time.   App. 1, Exs. E-G.   Here, the record includes no evidence undermining the School Board's basis that the Plaintiffs were unable to achieve a passing score on the Basic FSP course examination.   For these reasons, the School Board is entitled to judgment as a matter of law on the Plaintiffs' claim for disparate treatment discrimination.

**B.  Plaintiff Quintero's Failure to Accommodate Claim**

"[A] plaintiff makes a prima facie case of disability discrimination by showing that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability" <u>Branscomb v. Sec'y of the Navy</u>, 461 Fed. Appx. 901, 903 (11th Cir. 2012) (citing <u>Cleveland v. Home Shopping Network, Inc</u>., 369 F.3d 1189, 1193 (11th Cir. 2004).   Once a plaintiff puts forth a <u>prima</u> <u>facie</u> case for disability discrimination, the <u>McDonnell Douglas</u> burden-shifting

14

framework discussed above applies.  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004); Wascura v. City of South Miami, 257 F.3d 1238, 1242 (11th Cir.2001).

Quintero's disability discrimination claim fails for several reasons.  First, Quintero has not met her burden to establish that she is "disabled" as that term in defined by the ADA.  "[I]t is incumbent upon those 'claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial.'"  Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 507 F.3d 1306, 1311 (11th Cir.2007) (quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)). Therefore, a plaintiff must present evidence to show (1) that her alleged impairment substantially limits one or more major life activities, (2) that she has a record of such an impairment, or (3) that her employer regards him as having such an impairment. See 42 U.S.C. § 12102(1).

The Plaintiff has failed in her burden.  She claims to be "a slow learner and have problems reading and writing in Spanish and English."  App. 10 at ¶ 5; App. 4 at 67 ("Q. Mrs. Quintero, do you have any problems learning?  A.  Yes.").  However, Quintero admitted that had never seen a doctor regarding this issue or been diagnosed as having any type of learning disability.  Quintero Depo. at 34-36, 65-65.

Claiming to have unspecified "learning problems" does not make Quintero disabled as that term in contemplated by the ADA.  See Morisky v. Broward Cnty., 80 F.3d 445, 448 (11th Cir.1996) (per curiam) (citation omitted) (holding that "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA"); Falso v. Churchville–Chili Cent. School Dist., 547 F.Supp.2d 233 (W.D.N.Y.2008) (dismissing ADA failure to accommodate claim based on unspecified learning disability).

Moreover, Quintero failed to offer any evidence demonstrating how her alleged impairment substantially limits one or more major life activities.  Under the ADA, "the claimant must present sufficient evidence of the significant restriction before the court may turn the issue over to the trier of fact. This evidence must include information regarding the abilities of the average person in the general population." Maynard v. Pneumatic Products Corp., 233 F.3d 1344, 1349 (11th Cir.2000). Thus, in order to demonstrate the existence of a disability, an ADA plaintiff must present "some evidence of how well the average person in the general population performs the major life activity

15

in question." <u>Id.</u> at 1350.  Given Quinterro's vague claims regarding being a "slow learner" and lack of evidence of a significant restriction, she has failed to establish that she is disabled under the ADA. <u>See</u> <u>West v. Town of Jupiter Island</u>, 146 F. Supp. 2d 1293, 1301 (S.D. Fla. 2000) (holding that "since the plaintiff failed to provide any evidence whatsoever of how well the general population perform[ed] any major life activities in questions with respect to either his claims for learning disabilities or obesity[,]" "the plaintiff cannot successfully assert claims under the ADA for these alleged disabilities.").

Second, Quinterao is not a "qualified individual." "A 'qualified individual with a disability' is an 'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" <u>Davis v. Florida Power & Light Co.</u>, 205 F.3d 1301, 1305 (11th Cir. 2000) (quoting 42 U.S.C. § 12111(8)). "Essential Functions" are defined as  "fundamental job duties of the employment position." <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 835 (11th Cir. 1998). "[I]f [the plaintiff] is unable to perform an essential function of his...job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA." <u>Davis</u>, 205 F.3d at 1305 (quotation omitted).

Here, Quintero is not a qualified individual under the ADA because she was not able to perform the essential functions of his job **even with** an accommodation.  Quintero claims that she could not pass the Basic FSP course because it was offered only in English and she does not read or write in English.  DE 1 at 8; App. 4 at 15, 66, 67-68.  As such, Quinterro's difficulty the Basic FSP examination was not her alleged learning disability; rather, the issue was her inability to read and write in English.  Providing an accommodation for her alleged learning disability would not have addressed this lack of English.[3]

---

[3]The "inability to understand the English language is not considered a disability under the ADA."  <u>Hiramanek v. Clark</u>, No. 5:13-CV-00228-RMW, 2016 WL 4729182, at *3 (N.D. Cal. Sept. 12, 2016) (citing 28 C.F.R. Pt. 35, App. B ("Physical or mental impairment does not include...cultural, economic, or other disadvantages, such as having a prison record, or being poor. Nor is age a disability."); <u>Underwood v. La Salle Univ.</u>, No. CIV.A. 07-1441, 2007 WL 4245737, at *5 (E.D. Pa. Dec. 3, 2007) ("As to the other basis for Underwood's disability claim-his use of Ebonics-at most makes him as disabled as any one in the United States for whom English is a second language, none of whom would be considered "disabled" under the

Passing the Basic FSP course was an essential function of the Facilities Serviceperson position.  Whether a particular job function is essential is a fact-specific inquiry that is conducted on a case-by-case basis.  See D'Angelo v. Conagra Foods, 422 F.3d 1220, 1230 (11th Cir. 2005).  "Moreover, 'consideration shall be given to the **employer's judgment** as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.'" Holly v. Clairson Indus., L.L.C., 492 F.3d 1247,1257(11th Cir. 2007) (quoting 42 U.S.C. § 12111(8)).  Here, the undisputed record evidence establishes that passing the Basic FSP course was required by both the CBA entered into by the Plaintiffs' union and the School Board and of the job description.  App. 1, Exs. A, B.  As a result, passing the course is an essential function of the job that Quinterro could not meet regardless of any accommodation provided by the School Board for her alleged learning difficulties.

Third, even if Quinterro could state a prima facie claim under the ADA, the School Board remains entitled judgment as a matter of law because she cannot overcome its legitimate, non-discriminatory reason for terminating her.  As explained above, Quintero's termination documents reflect that she was being terminated for failing to complete the Basic FSP course.  She cannot show that this reason was mere pretext for discriminating against her on the basis of her disability.

Dated: May 3, 2017

Respectfully submitted,

 /s/ Hudson C. Gill
Michael T. Burke, Esquire (338771)
Burke@jambg.com
Cardona@jambg.com
Hudson C. Gill, Esquire, (15274)
Johnson, Anselmo, Murdoch,
Burke, Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Fort Lauderdale, Florida 33304
Telephone: 954-463-0100
Counsel for Defendants

---

Rehabilitation Act or the ADA.").

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 3rd day of May, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

JOHNSON, ANSELMO, MURDOCH, BURKE,
PIPER & HOCHMAN, P.A.
*Counsel for Defendants*
2455 East Sunrise Boulevard, Ste. 1000
Fort Lauderdale, FL 33304
Telephone: 954-463-0100

BY: *  /s/ Hudson C. Gill*
    MICHAEL T. BURKE
    Florida Bar No. 338771
    HUDSON C. GILL
    Florida Bar No. 15274

18

## SERVICE LIST

Gina Marie Cadogan, Esq.
Gina Marie Cadogan, P.A.
300 S. Pine Island Rd., Ste. 107
Telephone: 954-606-5891
gina@cadoganlaw.com
Kathy@cadoganlaw.com

---

Michael T. Burke, Esquire
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Ft. Lauderdale, FL 33304
Telephone:  954-463-0100
Burke@jambg.com
Cardona@jambg.com